UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 4:05CR353SNL(MLM) |
| ) | |
| JACQUELINE HAYES, ET AL, ) | |
| ) | |
| Defendant. ) | |

# REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

On August 31, 2005 this matter came before the court for an Evidentiary Hearing on defendant Hayes' Motion to Suppress Evidence and Statements. [Doc. 33] The government had previously filed a written response. [Doc. 36] Following the hearing defendant requested and was granted an opportunity to brief certain issues that arose during the hearing. Defendant filed a Second Motion to Suppress Evidence and Statements [Doc. 44] and on September 19, 2005 the government filed a Supplemental Response [Doc. 47].

At the hearing the government presented the testimony of James R. Applebaum, a Special Agent with the FBI for twenty years. Based on the testimony and evidence adduced and having had the opportunity to observe the demeanor and evaluate the credibility of the witness, the undersigned makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

SA Applebaum has been assigned since the early 90's to investigate federal health care fraud, and other federal health care offenses. His investigation of defendant Hayes began in July, 2002 when he received information from a state investigator, Julia Bowen,

that defendant and some of her relatives had filed false claims. Ms. Bowen told SA Applebaum that defendant Hayes had an attorney for civil matters. SA Applebaum noted that defendant's businesses fall under the definition of a "Federal health care benefit program." 18 U.S.C. § 24 *et seq.* [1]

**7/09/02 Statements**

On 7/09/02 during normal business hours SA Applebaum and SA Shannon McDaniel went to defendant Hayes' offices, Watkins Loving Care/Complete Care of America and International, Inc. in room #301 in the Northland Shopping Center Medical Building in the Northland Shopping Center in Jennings, Missouri. The entry door led to a reception area and behind this area was an office with a desk. SA Applebaum identified himself and the other agent and they met with defendant Hayes in the office. They told her they were beginning an investigation and wanted to ask her some questions. SA Applebaum told defendant Hayes they were not there to arrest her or to restrict her freedom or liberty in any way. He told her she had the right to a lawyer and the right not to speak to the agents. She agreed to talk to the agents. SA Applebaum made no threats or

---

[1] **18 U.S.C. § 24 states as follows:**
**§ 24. Definitions relating to Federal health care offense**
(a) as used in this title, the term "Federal health care offense" means a violation of, or a criminal conspiracy to violate - -
    (1) section 669, 1035, 1347 or 1518 of this title;
    (2) section 287, 371, 664, 666, 1001, 1027, 1341, 1343, or 1954 of this title, if the violation or conspiracy relates to a health care benefit program.
(b) as used in this title, the term "health care benefit program" means any public or private plan or contract, affecting commerce, under which any medical benefit, item, or service is provided to any individual, and includes any individual or entity who is providing a medical benefit, item, or service for which payment may be made under the plan or contract.

promises to induce her to speak to them. He told her he knew she had family members in the businesses. He made no threats or promises regarding defendant Hayes' family members. The agents spoke with her approximately one hour. During the interview, defendant Hayes made several attempts to call her civil attorney but apparently was unable to reach him. During the interview they observed her speech and demeanor. She did not appear impaired and seemed to understand their questions. She was friendly and talkative and responded appropriately to their questions. During the interview Gwen Silvers, defendant Hayes' sister, was present and right outside the interview room door. After the interview, the agents left and defendant Hayes and her sister remained at their business office.

**2/10/03 Statements and Documents**

On 2/10/03 defendant Hayes was deposed pursuant to 18 U.S.C. § 3486. Prior to the deposition, on October 10, 2002, defendant Hayes had received an administrative investigative demand ("subpoena") requesting her to produce certain documents to the United States Attorney. After the issuance of the subpoena, Assistant United States Attorney Dorothy McMurtry and defendant Hayes' lawyer, Stephen J. Nangle, agreed on a date for the production of the documents and the deposition of defendant Hayes.

On 2/10/03 defendant Hayes and Mr. Nangle came to the offices of the U. S. Attorney and defendant's sworn testimony was transcribed by a court reporter. See Transcript, Gov.Ex.4. The transcript establishes that defendant Hayes was not in custody, was represented by counsel throughout and was not coerced or threatened in any way. No promises were made to induce her to make statements.

The government's first Response to defendant Hayes' Motion to Suppress states the government did not conduct any searches or seize any evidence from the person or property of defendant Hayes. As noted above, the documents belonging to defendant Hayes were produced pursuant to a subpoena under 18 U.S.C. § 3486.

**Statements to Missouri State Officials**

Although no testimony was adduced regarding defendant Hayes' statements to Missouri State Officials, at the Evidentiary Hearing the government turned over to defendant Hayes three audio tapes. Defendant Hayes' Second Motion to Suppress indicates that one was a recording of Joan Robinson, who was a nurse being interviewed by a state investigator; another is of Dr. Linda Allen, M.D. in a phone conversation with defendant Hayes regarding records; and the third is of Walt Miller in a phone conversation with defendant Hayes regarding an employee who had represented herself as a nurse. These recordings were apparently made during civil litigation involving defendant Hayes in state court. The second Motion to Suppress says defendant Hayes was not made aware that her conversations were taped, however no evidence was adduced on this subject. Nor was there testimony or evidence that Dr. Allen or Mr. Miller knew they were being recorded or consented to the recordings. There is no testimony or evidence before the court of the capacity in which Dr. Allen and Mr. Miller engaged in the calls or at whose behest they did so.

Counsel for defendant argues that *if* the calls were made at the request of the lawyer(s) for the Missouri Department of Social Services, the Division of Medical Services or the Department of Health and Senior Services, they may well have run afoul of the Missouri Rules of Ethics, specifically Rule 4-4.2 which prohibits an attorney representing

a party in a case [or his investigator] to communicate with a party known to be represented by counsel without the permission of the other lawyer or being authorized by law to so. The government's supplemental Response filed approximately one month *after* the Evidentiary Hearing says "If called to testify at the pretrial hearing on the Motion, Dr. Linda Allen and Walt Miller *will* testify that they were aware and consented to the recording of their telephone interviews of defendant Hayes." (emphasis added) The tapes were turned over at the hearing and no evidence or testimony was adduced by the government about these calls.

## CONCLUSIONS OF LAW

**7/9/2002 Statements**

As more fully set out above, on 7/9/02 defendant Hayes was interviewed by SA Applebaum at her office in the Northland Medical Building. SA Applebaum specifically told her she was not under arrest and could call a lawyer.

It is uncontroverted that not all interactions between law enforcement officials and citizens amount to a "seizure" of the person. See INS v. Delgado, 446 U.S. 210, 215 (1984). Although the line between a purely consensual encounter and an arrest is sometimes difficult to draw, it is clear that in order to amount to an "arrest" requiring probable cause, at a minimum the officer "by means of physical force or show of authority [must have] in some way restrained the liberty of a citizen." United States v. Mendenhall, 446 U.S. 544, 552 (1980) ("a person has been 'seized' within the meaning of the Fourth Amendment only if in view of all the circumstances surrounding the incident, a reasonable person would have believed he was not free to leave.") In the present case, clearly defendant Hayes was not under arrest. The interview took place during normal business hours in defendant

Hayes' office, defendant's sister was present and when the interview was over, the agents left. At no time did they interfere with her liberty or freedom. They made no threats or promises to induce her to speak to them.

Because she was not under arrest, she had no Fifth Amendment right to be advised of her Miranda rights. These rights are required only when defendant is both in custody and interrogated. Miranda v. Arizona, 384 U.S. 436, 444 (1966).

Defendant Hayes asserts she had a Sixth Amendment right to counsel because the investigation by state officials and resulting litigation were so closely related to the criminal charges eventually filed that the criminal proceedings had actually been "initiated."[2] This argument is without merit. Here, criminal proceedings were not initiated until July 25, 2005 - - three years after the interview.

Generally speaking, the Sixth Amendment right to the assistance of counsel does not attach during the investigative stage of a prosecution prior to the bringing of a charge, even if the particular person is the focus or target of the investigation. See Beck v. Bowersox, 362 F.3d 1095, 1101 (8th Cir. 2004); Kirby v. Illinois, 406 U.S. 662, 689 (1972); Am. Jur. 2d § 1206 (May 2005).

The United States Supreme Court has consistently held that "it has been firmly established that a person's Sixth... Amendment right to counsel attaches only at or after the time that judicial proceedings have been initiated against [the person]." U.S. v. Gouevia, 467 U.S. 180, 187 (1984) quoting Kirby v. Illinois, 406 U.S. at 688. The weight of the authority involves "points of time at or after the initiation of adversary criminal

---

[2] Defense counsel acknowledges in her Second Motion to Suppress Evidence and Statements that the Sixth Amendment right to counsel does not attach until adversarial criminal proceedings are "initiated."

- 6 -

proceedings - - whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." Kirby, 406 U.S. at 689; Beck, 362 F.3d at 1101. Accordingly, the Supreme Court has never held that the Sixth Amendment right to counsel attaches before or even at the time of an arrest. See Gouevia, 467 U.S. at 190; Beck, 362 F.3d at 1102.

In addition, as the government points out in its Supplemental Response, the Sixth Amendment right to counsel is "offense specific," McNeil v. Wisconsin, 501 U.S. 171, 175 (1991), that is not triggered merely because the offenses are "factually related". Thus, defendant Hayes did not have a Sixth Amendment right to counsel even if the State of Missouri was investigating her for related conduct at the same time.

**2/10/03 Statements and Documents**

As more fully set out in the Findings of Fact above, defendant Hayes was sent a subpoena for documents pursuant to 18 U.S.C. § 3486 and her deposition was taken in the presence of her lawyer. No serious challenge is raised to these proceedings and neither her statements in the deposition nor the documents should be suppressed.

**Statements to Missouri State Officials**

There is no evidence or testimony before the court about the calls between defendant Hayes and Dr. Linda Allen and Walt Miller. Both defendant and the government make arguments in their briefs about these calls but this is insufficient for the court to make conclusions of law. Defendant argues Dr. Allen and Mr. Miller may not have known their conversations were recorded and may not have consented and that they may have been speaking at the behest of lawyers for various departments and divisions of the State. These

mere unsupported allegations are not supported by any evidence in the record. The government says Dr. Allen and Mr. Miller would testify they knew and consented. Again, however, there is no evidence in the record.

The Federal Wiretap Statute regulates the interception of wire, oral and electronic communications. 18 U.S.C. § 2510-22 (2000). It is not unlawful to intercept such a communication if a party to the communication has given prior consent. 18 U.S.C. § 2511(2)(c). Nor does such an interception violate the Fourth Amendment. <u>United States v. Corona Chavez</u>, 328 F.3d 974 (8th Cir. 2003) <u>citing</u> <u>United States v. Gomez</u>, 900 F.2d 43, 44 (5th Cir. 1990). The government has the burden of proof on the issue of consent. <u>Corona Chavez</u> 328 F.3d at 978; <u>Gomez</u>, F.2d at 44. Consent to interception of a telephone call may be inferred from knowledge that the call is being monitored. <u>United States v. McMillan</u>, 508 F.2d 101, 104 n.2 (8th Cir. 1974) ("[I]t will normally suffice for the government to show that the informer went ahead with a call after knowing what the law enforcement officers were doing."), <u>cert. denied</u>, 421 U.S. 916 (1975).

In the present case, there is no evidence in the record that Dr. Allen and Mr. Miller had knowledge of the recordings or that they consented. <u>See</u> <u>Gomez</u>, 900 F.2d at 44 (no evidence in the record of knowledge or consent). The court finds that the government's mere assertion, without more, that they knew and consented is insufficient to meet the government's burden of proof. Thus, these two tape recorded calls should be suppressed.[3] The court need not consider the alleged potential ethical violations argued by defendant because there is, as noted above, no evidence before the court about the calls.

---

[3] If the government intends to use these calls at trial and makes a request to present evidence on the record, the court will consider a brief supplemental hearing.

**Accordingly,**

**IT IS HEREBY RECOMMENDED** that defendant's Motion to Suppress Evidence and Statements [Doc. 33] and Second Motion to Suppress Evidence and Statements [Doc. 44] should be **DENIED** with the exception of the two recorded calls as more fully set out in this Report and Recommendation.

The parties are advised that they have eleven (11) days in which to file written objections to this report and recommendation pursuant to 28 U.S.C. §636(b)(1), unless an extension of time for good cause is obtained, and that failure to file timely objections may result in a waiver of the right to appeal questions of fact. See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990).

/s/Mary Ann L. Medler
MARY ANN L. MEDLER
UNITED STATES MAGISTRATE JUDGE

Dated this   23rd    day of September, 2005.